UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

GEORGE J. MATSEN                                       Chapter 13
BRENDA R. MATSEN

    Debtors.                                Bankruptcy No. 07-00941F

MEMORANDUM DECISION:
MOTION FOR PERMISSION TO USE TAX REBATE

    Debtors George and Brenda Matsen move for permission to retain and to spend the tax rebate they anticipate receiving under the Economic Stimulus Act of 2008, Pub.L.No. 110-185, 122 Stat. 613 (Feb. 13, 2008). They describe the rebate as the "2007 George Bush tax rebate." For simplicity's sake, I will label it just the "rebate." Carol F. Dunbar, the standing trustee, objects. Hearing on this contested matter was held on May 15, 2008 in Fort Dodge. Michael P. Mallaney appeared as attorney for Matsens. Carol F. Dunbar appeared on her own behalf.

    Although characterized by Matsens as a motion to use property, I conclude that Matsens' request is properly denominated as a motion to modify their plan after confirmation. See 11 U.S.C. § 1329. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Notice of Matsens' request and the hearing was served on all creditors and parties-in-interest. Only Dunbar objected.

    Matsens anticipate the rebate will be $1,200.00. They

desire to use it for purchase and installation of a new air conditioner for their home and to buy a new lawnmower.  The air conditioner would cost $990.00 (doc. 91).  It would replace one they had installed in the year 2000.

The only evidence from debtors was an offer through their attorney that if George Matsen were called as a witness, he would testify that Matsens need their air conditioner repaired and that they do not have excess monthly income to pay the cost of $990.00.  Dunbar did not object to this offer.  In support of the request, Matsens filed a repair estimate from Moeller Furnace Company (doc. 91).  There was no objection to my considering this document, and I will, although it was not offered into evidence.

Dunbar cross examined George Matsen.  He testified that his wife continues to make payments through her employer on her 401(k) plan loans and also continues to make voluntary contributions to the plan in the amount of six per cent of her gross income.  The monthly voluntary contributions amount to approximately $270.55.

Matsen testified also as to the debtors' car payments, telecommunications payments and home maintenance costs.  On average, they spend $125.00 per month for routine repairs and maintenance to their home.  He testified that the cost of groceries and gas for the cars has increased.

Dunbar argues that Matsens' monthly expenses for certain

discretionary items (such as telecommunications, recreation, and home maintenance), as estimated in their amended schedule J (doc. 51), are sufficiently generous to absorb the additional expenses of the air conditioner and the lawnmower.  Also, she argues that Matsens have the ability to pay for these expenses in lieu of Brenda Matsen's generous monthly contributions to her 401(k) plan.  As stated, she contributes approximately $270.55 per month to her plan.  This is approximately six per cent of her gross income, a contribution matched by her employer.  Dunbar contends, therefore, that she, as trustee, should receive the tax rebate for the benefit of unsecured creditors.  The parties do not dispute that the tax rebate is part of disposable income under 11 U.S.C. § 1325(b)(2).

   To put the motion and the offered evidence into context, I take judicial notice of certain facts regarding the case and regarding disposable income as they are apparent from schedules and other documents filed in the case.  Such facts would appear not to be disputed.

    Matsens filed their chapter 13 petition on April 26, 2007. The original schedule I showed current monthly income of $7,085.82, after all payroll deductions, including those for retirement plan contributions and loan repayments.  Matsens' current monthly expenses were estimated at $6,097.72, leaving estimated disposable income of $988.10 per month (doc. 2,

schedules I and J).

Matsens' form 22C calculated their disposable income pursuant to 11 U.S.C. § 1325(b)(3). The monthly disposable income was $1,640.30 (doc. 11). Matsens' applicable commitment period for their plan was 60 months.

Matsens filed amended schedules I and J showing current monthly income of $6,807.12 and monthly expenditures of $6,097.72. The amendment eliminated income from certain part-time work which Matsens said was "uncertain" (doc. 33). They amended schedules I and J a second time showing monthly income of $6,366.52 and monthly expenditures of $5,890.61 (doc. 51). The new disposable income figure was, therefore, $475.91 (id.).

An amended form 22C was filed on October 22, 2007. It showed current monthly income of $12,312.80, deductions of $11,370.75, and disposable income of $942.05 per month (doc. 53).

Pursuant to 11 U.S.C. § 1325(b)(1)(B), Matsens' projected disposable income of $942.05 for the commitment period of 60 months must be applied to make payments to unsecured creditors under the plan. Coop v. Frederickson (In re Frederickson), 375 B.R. 829, 832 (B.A.P. 8th Cir. 2007). The amount to be paid to unsecured creditors under this test is $56,523.00.

Matsens' Third Amended Plan (doc. 61) was confirmed with an oral modification made at the confirmation hearing held January 17, 2008 (docs. 61, 63, 64, 66, and 67). The plan period was 60

4

months, and it was based on Matsens' disposable income as calculated from their amended schedules I and J but with the disposable income increasing at certain intervals when Matsens paid off secured debts provided for by the plan (doc. 61). Pursuant to the confirmed plan, it was calculated that $66,494.55 would be provided to creditors holding allowed unsecured claims. The plan, therefore, met the "Frederickson test," supra. Claims were later allowed or deemed allowed in the total amount of $127,378.33. The estimated distribution would amount to a 52 per cent "dividend."

　　The dividend could be greater, however, as in addition to the projected monthly payments of disposable income, Matsens promised to pay to the trustee "any net amount(s) received as bonus pay/part time work or any other additional income to the extent these funds constitute disposable income as defined in 11 U.S.C. Section 1325" (doc. 61, Third Amended Plan, page 1, last paragraph of section 1).

　　As previously stated, Dunbar contends that the new air conditioner and lawnmower should be purchased by Matsens out of the "generous" expense estimates in Matsens' schedule J or in lieu of Mrs. Matsen's contribution to her 401(k) plan. Matsens argue that although some of those allowances might be generous, other areas have increased beyond expectations--food and gasoline. Matsens argue that overall, they do not have the extra

income each month to pay for the air conditioner and the lawnmower.

I disagree with Dunbar's contention that various other expense categories should absorb these proposed expenses because the other categories provide "generous" allowances. The trustee had the opportunity to object to Matsens' calculation of disposable income at the time of the hearing on confirmation of the Third Amended Plan. She did not. I decline to revisit those same expenses now.

There is one category of expenses that should be re-examined in determining whether Matsens may have access to the tax rebate. For purposes of determining disposable income for plan payment purposes, Matsens estimated monthly home maintenance expenses at $125.00. George Matsen testified that they spend "approximately" that much each month on routine maintenance and repairs.

An expected replacement of an air conditioning unit might be budgeted as part of the home maintenance category of monthly expenses. But also, it might be unforseen. Based on the testimony, I find that the replacement of debtors' air conditioner was not estimated as part of the projected home maintenance expenses. So long as Matsens' plan payments meet the Frederickson test, I conclude they should be able to retain $990.00 for the repair.

Dunbar contends also that Matsens could afford to replace

the air conditioner and to buy the lawnmower instead of Brenda Matsen's making monthly contributions to her 401(k) plan. During the hearing, I asked for more facts as to the nature of the plan. Mrs. Matsen filed an affidavit regarding the plan on May 27, 2008 (doc. 99). She stated that her contributions are voluntary, and that her employer matches her contributions up to a maximum of six per cent of her gross wages if she makes monthly contributions. She makes the maximum contribution that the employer will match, and she desires not to lose the matching contribution.

These contributions are permitted by the Bankruptcy Code. Sections 541(b)(7)(A) and (B) provide that amounts received or withheld by an employer for such contributions do not constitute disposable income as defined by § 1325(b)(2). The trustee may not now force Mrs. Matsen to cease such voluntary contributions to pay for the cost of the air conditioner.

The amount of evidence offered was sparse as to the need for a new air conditioner and the inability of debtors to pay for the installation out of their home maintenance projection of $125.00. However, it does support the request. The evidence on the need for and the cost of the lawnmower replacement is non-existent.

IT IS ORDERED that the motion to retain $990.00 from the rebate for air conditioner repair is granted. The request to retain the balance of the rebate for the purchase of a new

lawnmower is denied.  Judgment shall enter accordingly.

    DATED AND ENTERED <u>JUNE 10, 2008</u>

                                                  William L. Edmonds, Bankruptcy Judge